UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, ) | Case No. 2:13-cv-12218 |
| ) | Hon. Nancy G. Edmunds |
| Plaintiff, ) | |
| vs. ) | |
| ) | |
| APRIL HOUSE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

| | |
|---|---|
| PAUL J. NICOLLETTI  (P-44419) | JOHN T. HERMANN  (P-52858) |
| Attorney for Plaintiff | Attorney for Defendant |
| 36880 Woodward Ave, Suite 100 | 2684 West Eleven Mile Road |
| Bloomfield Hills, MI 48304 | Berkley, MI 48072 |
| (248) 203-7801 | (248) 591-9291 |

**DEFENDANT'S BRIEF IN RESPONSE TO PLAINTIFF'S
MOTION TO AMEND THEIR COMPLAINT**

I.   INTRODUCTION TO CASE

Plaintiff alleges that its copyrighted materials (i.e. pornographic video films) were "made available" for distribution through a series of BitTorrent transactions using a computer address assigned to Defendant's internet account. In support of its claims, Plaintiff asserts that since the infringing activity occurred on Mrs. House's internet account – she must therefore be the infringer. Beginning in October of 2012, thru April of 20013, Plaintiff's computer technicians identified an IP address as being involved in an internet "swarm" that was allegedly distributing its copyrighted works.

On May 17, 2013, Plaintiff filed a complaint against a John Doe subscriber assigned IP address 69.14.181.108 alleging acts of copyright infringement based on their use of a BitTorrent file sharing protocol program. *(Plaintiff's Original Complaint ¶¶ 19-29)* That same day, Plaintiff

filed its Motion for Leave to Serve A Third-Party Subpoena Prior to A Rule 26(f) Conference. In its motion, Plaintiff's asserted that the subpoena were necessary so that Plaintiff may learn the "actual identity" of the alleged infringer who were only known by an internet protocol address.

Plaintiff relies on the declaration executed by Tobias Feiser (Docket Entry No. 3-1 ¶ 20) (hereinafter "the Feiser Declaration".) The Feiser Declaration, provides no information or details whatsoever as to how Plaintiff as opposed to someone else having access to her internet service committed a volitional act of copyright infringement. Accordingly, Plaintiff's claim of infringement is based on the assumption that Defendant is the **_actual_** person who utilized the internet account for the aforementioned acts. Similarly, the Feiser Declaration fails to provide any information demonstrating Mr. House's knowledge or awareness of what was occurring over her internet account.

On May 22, 2013, the court granted Plaintiff's request to serve a third-party subpoena upon the internet service provider for John Doe subscriber assigned IP address 69.14.181.108 and severed the remaining defendants from the instant action. (DE No.5) On July 15, 2013 counsel for Plaintiff served a third-party subpoena on Wide Open West ("WOW") seeking the name and address of the registered accountholder for the internet address 69.14.181.108 In response to the subpoena, WOW produced records and information identifying April House as the registered accountholder for the IP address.

On July 24, 2013, Plaintiff amended their complaint identifying Mr. House as the Defendant. Plaintiff asserts that Mrs. House utilized a BitTorrent software program to download and/or distribute certain adult content videos. *(Plaintiff's Original Complaint ¶¶ 49, 56)* Plaintiff recognizes and concedes that its methodology of targeting suspected infringers based on the

owner of the internet account is likely to result in a high number of false positive identifications.[1] Similarly, Plaintiff recognizes and concedes that the targets of their anti-infringement campaign (downloaders of its adult films) are predominately male – not female. (Exhibit 3; Declaration of Collette Fields, ¶18) In order to guard against this prospect, Plaintiff encourages both Doe defendants and individuals actually named to provide them with information substantiating their claim of non-infringement.[2]

If Plaintiff is to be taken at their word, the purpose of the exculpatory evidence affidavit is determine (relatively early on in the litigation) if the named individual is responsible or whether someone else may simply have simply used the accountholders internet connection. On June 12, 2013, Mrs. House (who was received a copy of the subpoena from her internet service provider, provided Plaintiff's counsel with an exculpatory affidavit (similar to the form attached to the John Doe Complaint) attesting that (1) she maintained an open wi-fi connection that allowed other individuals access to her internet connection, (2) had never used BitTorrent, (3) had never viewed and/or downloaded any of Plaintiff's adult movies; (4) and was unaware of anyone else using her internet connection for any improper purpose. More recently, the undersigned has been informed by Plaintiff's out of state settlement coordinator (i.e. Elizabeth Jones that the exculpatory evidence affidavits are never actually considered unless the named defendant is a coffee shop, restaurant, or some other location with public wi-fi access.

---

[1]Indeed, as one judge observed in another of BitTorrent case:

> 30% of the names turned over by the ISP's are not those of the individuals who actually downloaded or shared copyrighted material.

Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 229, 242 (S.D.N.Y. 2012) citing (1/17/12 Tr. at 16) (Emphasis Added)

[2]Attached as Exhibit D to Plaintiff's complaint is a version of the exculpatory evidence affidavit.

September 26, 2013, the court issued its case management order allowing the parties to engage in discovery up and until January 3, 2014. In its Rule 26 Disclosures, Defendant submitted a copy of a form of the exculpatory evidence affidavit proffered by Plaintiff attesting that (1) she maintained a wireless internet router with WOW which allowed other individuals access to her internet service; (2) she had no reason to believe that anyone accessing her internet services was doing anything illegal and/or actionable; (3) does not know who if anyone used her internet account to download or exchange any of Plaintiff's copyrighted works; (4) has never downloaded or exchanged any of Plaintiff's copyrighted works.

During the course of Discovery, the parties submitted written discovery requests. In response to Defendant's Request for Admission, Plaintiff admitted to certain deficiencies in its proofs but continued to insist that Mrs. House was the person responsible for the alleged acts of infringement.   (Exhibit 1; Plaintiff's Response to Request for Admissions)

> **Request for Admission No. 11**: Admit that Plaintiff's good faith basis for bringing this action against Defendant is solely grounded upon the fact that she is the registered own of an internet service account from which it was believed that copyrighted movies were being exchanged.
>
> **Response:** Admitted.
>
> **Request for Admission No. 13**: Admit that Plaintiff is aware that internet service accounts including internet protocol addresses can be used by other individuals. Although the Plaintiff will prove by a preponderance of the evidence that Defendant committed the infringement.
>
> **Response:** Admitted. Although the Plaintiff will prove by a preponderance of the evidence that Defendant committed the infringement.
>
> **Request for Admission No. 14**: Admit at the time of filing the complaint, Plaintiffs were aware of the possibility that someone else may have been using Defendant's internet account to download and/or exchange the copyrighted materials referenced in the complaint.
>
> **Response:** Admitted. Although the Plaintiff will prove by a preponderance of the evidence that Defendant committed the infringement.

**Request for Admission No. 17**: Admit that you are aware that that The ISP to which the Defendant subscribed may not correlate to the actual identity of the individual who illegally downloaded and/or exchanged the copyrighted movies owned by Plaintiffs. If you are unable to admit the allegations in this request, please state with particularity the reasons why you are unable to admit the request.

**Response:** Admitted. Although the Plaintiff will prove by a preponderance of the evidence that Defendant committed the infringement.

**Request for Admission No. 18**: Admit that Plaintiff's computer investigators have only been able to identify Defendant's IP Address (as opposed to Defendant himself) as being associated with swarm that was allegedly distributing Plaintiff's copyrighted works. If you are unable to admit the allegations in this request, please state with particularity the reasons why you are unable to admit the request.

**Response:** Admitted. Although the Plaintiff will prove by a preponderance of the evidence that Defendant committed the infringement.

On January 2, 2013, Mrs. House appeared for her deposition and again testified that that she was merely the accountholder and did not engage in any act of infringement nor was she aware of anyone else using her account to do so. In particular, Mrs. House testified she maintained a wireless internet system that was accessible by other individuals including friends, and family members, guests and neighbors without a password.  (Exhibit 2; *Deposition Transcript of April House, pp. 9-17)* Family members having access to her internet connection included her husband, two adult stepsons, and adult daughter. At her deposition, Ms. House attested that she has never utilized the referenced file exchange program and was unaware of anyone else using her internet connection to facilitate the download or exchange of Plaintiff's copyrighted works. (Exhibit 2; *Deposition Transcript of April House, pp. 46-49, 51-53, 55-56*) Plaintiff has admitted that the targets of their anti-infringement campaign (targeting downloaders of its adult films) are predominately male – not female. (Exhibit 3; Declaration of Collette Fields, ¶18)

After conducting Mrs. House's deposition, Plaintiff's claims were called into serious question. Despite the fact that their does not appear to be a credible basis to support a claim of copyright infringement, Plaintiff has continued to ramp up their litigation against Mrs. House in the hopes of extracting a settlement – regardless of whether it was Mrs. House or some other individual using her internet account to download their adult content film. With discovery set to close on February 17, 2014, and no additional information to support their claims against Mrs. House, Plaintiff has doubled back – claiming that Mrs. House's husband is the most likely infringer since he is the only adult male living in the household. (*Plaintiff's Motion for Leave to Amend p. 4*) Plaintiff's argument ignores the fact that Mrs. House has two stepsons who use her internet connection and meet the viewer profile suggested by Plaintiff. Although it is now asserting that it is Mrs. House is no longer the "most likely" infringer, Plaintiff has not abandoned their claims against her and is now seeking to amend their complaint to add an additional count of contributory infringement against Mrs. House. In support of its claims for contributory infringement, Plaintiff relies on the unsubstantiated claim that she materially participated in the aforementioned acts of infringement because the activity occurred on a computer that was located in her home.

II.     STANDARD OF REVIEW

Plaintiff's proposed amendment is more appropriately predicated upon a request to add an additional party. Although Fed R. Civ. Pro. 15 allows for an amendment of the pleadings Fed R. Civ. Pro. 21 is the appropriate rule for adding additional parties and provides:

> "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."

III.  ARGUMENT

Over the past several years, Plaintiff has initiated hundreds of nearly identical lawsuits across the country based on the representation that ISP subscriber information is necessary to "fully identify" the infringer. Indeed in this case, Plaintiff represented to the court that *ex parte* discovery was necessary in order to identify the person most likely responsible for the infringement. Once the requested discovery is obtained; however, the name and address of the internet accountholder is often insufficient to truly identify who if anyone actually engaged in any of the acts of alleged infringement. Pacific Century Intern. Ltd., v. Does 1-101, 2011 U.S. Dist. LEXIS 124518, *2 (N.D. Cal. 2011)(noting that Plaintiff disavowed previous representations to the court that the requested discovery would allow it to "fully identify" Defendants and further admitting that the discovery often will not reveal Defendants' identities); AF Holdings LLC v. Does 1-96, 2011 U.S. Dist. LEXIS 134655, at *11-12 (N.D. Cal. Nov. 22, 2011)(plaintiff conceded on the record that "the [ISP subscriber] information subpoenaed will merely reveal the name and contact information of the subscriber to the Internet connection that was used to download the copyrighted work, but it will not reveal who actually downloaded the work and therefore who can be named as a defendant.")

In Boy Racer, Inc. v. Doe, 2011 U.S. Dist. LEXIS 103550 (N.D. Cal. Sept. 13, 2011) a BitTorrent plaintiff initially claimed that its discovery requests were necessary to fully identify" a P2P network user suspected of violating the plaintiff's copyright only to recant its prior statement and insist that the initial round of discovery was merely one of many stepping stones in order to try and identify the alleged infringer:

> While Plaintiff has the identifying information of the subscriber, this does not tell Plaintiff who illegally downloaded Plaintiff's works, or, therefore, who Plaintiff will name as the Defendant in this case. It could be the Subscriber, or another

member of his household, or any number of other individuals who had direct access to Subscribers network.

Id. Needless to say the Boy Racer court found this "turn of events troubling, to say the least." Id. at *7-8.

In the present Plaintiff has utilized the power and authority of the judicial system to conduct a perpetual game of "whack a mole" discovery. On each occasion, Plaintiff represents that further discovery is needed in order to identify the "most likely" infringer. Time and time again, Plaintiff has represented that amendments are necessary in order to identify the "most likely" infringer. This strategy has less to do with identifying the identity of the alleged infringer and more to do with Plaintiff's efforts to sniff out individuals that are prime targets for settlements – regardless of whether there is any real claim of liability. What is perhaps most disturbing is that it is apparent that that when there is little or no support for the first person suspected of being the "most likely" infringer, Plaintiff tactically refuses to abandon their case for fear of being subjected to possible prevailing party costs and attorney fees under 17 U.S.C. § 505.

Similar BitTorrent plaintiffs have warned that efforts to extract settlements from individuals who have provided exculpatory evidence is inappropriate, abusive and unfair. In re BitTorrent Adult Film Copyright Infringement Cases, 2012 U.S. Dist. LEXIS 61447 at *19 (E.D.N.Y. 2012) (noting that "plaintiffs have employed abusive litigations tactics to extract settlements from John Doe defendants"). More on point, the court characterized Plaintiff's the failure to dismiss an action where the defendant offered a credible explanation of innocence (the exact same situation in Mrs. House's case) as an affront to the judicial system. c.f. Id. at 28.

Such admissions provide further support that Plaintiff's intention is to fuel the litigation grist wheel until someone agrees to pay their settlement demand – regardless of what is

uncovered at  Here Plaintiff admittedly does not know who actually committed the alleged infringement; 2) Plaintiff has failed to provide sufficient facts supporting an inference that the subscriber of the account is, in fact, the individual who actually uploaded or downloaded Plaintiff's movies; and 3) Plaintiff has failed to provide sufficient facts for holding an account subscriber liable for the allegedly infringing conduct of unknown others, even if such person(s) even existed.

    A.    <u>Futility of Plaintiff's Amended Claim for Contributory Infringement</u>

Secondary theories of copyright infringement require a showing that the defendant materially contributed to the infringing conduct of another with *knowledge* of the infringement. <u>A&M Records, Inc</u>. v. <u>Napster, Inc.</u>, 239 F. 3d 1004, 1019 (9th Cir. 2001); <u>Fonovisa, Inc</u>. v. <u>Cherry Auction, Inc.</u>, 76 F. 3d 259, 264 (9th Cir. 1996) <u>Gershwin Publishing Corp.</u> v. <u>Columbia Artists Mgmt., Inc.</u>, 443 F.2d 1159, 1162 (2nd Cir. 1971) Within the context of a computer system owner or operator, evidence of actual knowledge of specific acts of infringement is required for contributory copyright infringement. <u>Religious Tech Ctr</u>. v. <u>Netcom On-Line Communications Servs.</u>, Inc. 907 F. Supp. 1361, 1373 (N.D. Cal 1995)  <u>Chubby, Inc</u>. v. <u>Compuserve, Inc.</u>, 776 F. Supp. 135, 141 (S.D.N.Y. 1991)

Similarly, to establish such a claim of vicarious copyright infringement, a plaintiff must show that the defendant profited or obtained some other financial benefit from the infringing activity. <u>Fonovisa</u>, <u>supra</u> at 262, <u>Gershwin</u>, <u>supra</u> at 1162, see also <u>Polygram Int'l Publ'g, Inc. v. Nevada/TIG, Inc.</u>, 855 F. Supp. 1314, 1325 (D. Mass 1994) In the present case, the so-called evidence does not provide any support for such secondary theories of liability.  In fact, the only support for Plaintiff's claim of contributory infringement is that the activity occurred on Mrs. House's internet account.  In the present case, Mrs. House has offered evidence (verified interrogatory answers and deposition testimony) attesting that she did not participate in any acts of infringement and was unaware of any

acts of infringement occurring over her internet connection. Without additional information showing Mrs. House's awareness and participation, Plaintiff proposed amendment is futile.

> B. <u>Proposed Amendment Adding Mr. House Is Based Upon Speculation And Inconsistent With Plaintiff's Position That Mrs. House Is the "Most Likely" Infringer</u>.

Plaintiffs have previously admitted the IP address linked to Mrs. House provides the only basis for establishing its claims for copyright infringement. After realizing that there is an insufficient basis to identify the "most likely" infringer based upon this information alone, Plaintiff claims that Mr. House is the only one with a motive to commit the infringement since he is an adult male. (*Plaintiff's Motion for Leave to Amend p. 4*) Plaintiff's argument ignores the fact that Mrs. House two stepson's and other household guests (many of whom were also male) also had access to her internet connection. Plaintiff postulates that Mr. House must be the "most likely" infringer since his media preferences are aligned with other works that are suspected of being downloaded without authorization. *(Plaintiff's Motion for Leave to Amend, p. 2)* It suffices to say that these same media viewing profiles may equally apply to Mr. House's two adult sons who frequent the home and have access to Mrs. House's internet connection.

Furthermore, Plaintiff has not provided any explanation as to how it prepared or generated the supposed media profile matches that it alleges correlate to Mr. Houses' viewing habits. Nothing in the original complaint or in the Feiser Declaration provide any information about the protocol or reliability of the information contained in Plaintiff's expanded surveillance report. For example, the Feiser declaration provides a detailed analysis of how the cryptographic hash values (i.e. digital fingerprint) of the information exchanged in the Torrent swarm matched the numeric values of the full digital media copies of **Plaintiff works**. (*Feiser Declaration*, ECF No. 3-1 ¶ 19)

However, Mr. Feiser's declaration offers no such analysis or authentication regarding the *third-party infringement work*s referenced in its motion. In addition, the Feiser declaration does not offer any explanation as to how he was able to track the suspected third party works without simultaneously downloading and/or exchanging the information through the Torrent Network – which is itself an act of copyright infringement against the owners of the third party content. For example Mr. Feiser states that he was able to document a wider scope of activity (i.e. information regarding purported third party works) using the BitTorrent file distribution network. (*Feiser Declaration*, ECF No. 3-1 ¶ 21). In numerous proceedings throughout the country in which Plaintiff has argued that the "swarm joinder" of multiple defendants into a single action is proper, Malibu Media has averred that participation in Torrent "swarm exchange" necessarily means that the participant is simultaneously downloading and/or exchanging digital copies of the data file. This raises the question of whether Mr. Feiser is infringing upon the copyright of the third party works through his expanded surveillance efforts.

The methodologies for utilized by Mr. Feiser and/or the IPP have been called into question in the past as being suspect and/or unreliable. Upon available information, IPP 's only other known declarant is Daniel Arheidt, Mr. Arheidt who has filed a number of similar declarations on behalf of IPP see *Voltage Pictures LLC v. Mou Mme UNTEL,* Montreal, Quebec (Aug. 24, 2011 ). Daniel Arheidt is also a declarant for GuardaLey, International ("Guardaley") *see Nu Image, Inc v. Does 1-6,500*, No. 11-cv-0030 1-RLW, ECF No. 5-2 (D.D.C. Feb. 17, 2011)

GuardaLey, like IPP, is a German technology company that monitors and records online instances of alleged copyright infringement of films. Guardaley is located in Karlsruhe. Germany- the same city where Mr. Feiser's declarations for IPP are executed. Similarly,

GuardaLey also serves as Voltage's technology company. *See Voltage Pictures LLC v. Does 1-5.000*, 1:10-cv-00873 (D.D.C. 2011). If one also compares the wording of the various declarations of f Feiser, Arheidt and Patrick Achache, GuaradLey's owner, entire portions- and at times the entire document itself- are identical.

On November 18, 2009, Baumgarten Brandt, a law firm who had entered into a relationship with GuardaLey, filed suit after it discovered that Guard a Ley knew of several flaws concerning how they identified defendants, but chose not to disclose them. In its appeal to an injunction brought by GuardaLey, Baumgarten asserted that when identifying alleged infringers. GuardaLey:

1. includes mere inquiries, regardless as to whether any file was actually shared;

2. identifies people who neither upload nor download;

3. operates a 'honeypot'- that is they represent "by means of a falsified bit field, that it was always in possession of 50% of the tile being sought" If the actual file is being offered than an implied license is operative. If it is a garbage tile, than no infringement occurs. In either instance. IP addresses are being identified that did not infringe; and

4. does not indicate how it identifies each IP address, so there is no way to discern actual infringers from the innocent.

*Shirokov v. Dunlap, Grubb & Weaver*; et al, No. 10-cv-12043-GAO, ECP Nos. 55, 55-3, 55-10 and 55-11 (D. Mass. June 6, 2011). On May 3, 2011, the State Court of Berlin found the allegations above to be truthful, concluding in part that GuardaLey's evidence gathering technology does not check whether the accused actually downloaded (or uploaded) content and ruled against Guardaley. Shortly after these facts came to light, Guardaley quickly reinvented itself as IPP.[3]

---

[3] A partial list of aliases employed by GuardaLey include: DigiProtect, IP Equity, BP Equity, and BaseProtect. See, e.g. *Baseprotect UG v Does 1- X,* 2:11-cv003621-CCC-JAD (D.N.J. 2011).

Given the lack of reliability in IPP past methods of data collection and the lack of substantiation as to the methodology for identifying suspected works of third party infringement, Plaintiff has failed to present any reliable information in support of its request to add Mr. House as a party. Accordingly, Defendant, April House, requests that the court deny its request for leave to amend its complaint and/or add additional parties.

Dated: January 1, 2014     s/ John T. Hermann
JOHN T. HERMANN (P-52858)
Attorney for Defendant
2684 West Eleven Mile
Berkley, MI 48072
(248) 591-9291

## **CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that I electronically filed the foregoing paper with the Clerk of the Court with the ECF system which will send notification of each filing to the following:

Paul J. Nicoletti, Esq.

Dated: January 16, 2014                                s/ John T. Hermann
                                                       JOHN T. HERMANN (P-52858)
                                                       Attorney for Defendant
                                                       2684 West Eleven Mile
                                                       Berkley, MI 48072
                                                       (248) 591-9291

INDEX OF EXHIBITS

| Identifier | Title |
|---|---|
| 1 | Plaintiff's Response to Defendant's Request for Admissions |
| 2 | Deposition Transcript Excerpts of April House |
| 3. | Declaration of Collet Fields |